## Pierce Estate

*Roland Fleer*, for petitioner.

*William P. Manning, Jr.*, and *Wright, Spencer, Manning & Sagendorph*, for respondents.

TAXIS, P. J., July 24, 1962.—This petition was filed by Roland Fleer, Esq., on September 21, 1960. Respondents are Nancy Vadner Chance and Norman Vadner, sister and brother, who were represented by petitioner in an earlier proceeding in this estate.

In summary, petitioner alleges the following facts. Respondents' father, Samuel Vadner, first consulted him in November, 1956, for assistance in protecting certain United States bonds supposedly belonging to his children, which were about to be turned over to the executrix of the Pierce estate. Petitioner arranged for a bond, and was paid for his services. In March, 1957, Mr. Vadner again consulted petitioner, this time with reference to pressing his childrens' claim to ownership of the said bonds, in this court. After considerable correspondence and negotiation, a written contingent fee agreement was entered into by the parties on May 22, 1957, the pertinent language of which is as follows:

"I hereby agree to render the legal services necessary to press your claims against the Estate of Walter Bryant Pierce, Deceased, in the Orphans' Court of Montgomery County, Pennsylvania, to ownership of $23,500 in face value of United States Government bonds (or their proceeds if sold prior to recovery) and to $405. in cash, on the following contingent fee basis as to my services:

"(1) On only the excess over $21,000. in face value of said bonds or proceeds and cash recovered I shall be paid:

"(a) 35% if recovered by settlement before the case is 50% prepared for trial;

"(b) 50% if recovered by settlement after the case is more than 50% prepared for trial;

"(c) 60% if recovered after trial has begun.

"(2) The percentages are based on gross recovery; all Court costs and other expenses to be paid by you re-

gardless of results and on my request. Any expense over $10. subject to your approval.

"(3) To reflect the present discounted market value of the bonds, I agree to accept, in payment of any percentage due me as above, such bonds in kind at face value and cash, in the same proportion as bonds and cash are recovered."

Respondents' claim was sustained by this court (20 D. & C. 2d 51), and the executrix appealed to the Supreme Court. Since the first contingent fee agreement was restricted to representation in the lower court, on December 18, 1959, another agreement was made, the pertinent language of which is:

"I hereby agree to represent you in the pending appeal before the Supreme Court (No. 44 of January Term 1960), on the following basis:

"(1) Immediate payment of the sum of $150. in cash, and without regard for the outcome of the case in the Supreme Court;

"(2) An increase in the previous contingent percentage of 60% to 70% of the amount recovered in excess of $21,000. upon the same provisions as in (3) of the previous agreement.

"(3) As before, the contingent portion is based on gross recovery . . ."

Respondents' claim was likewise sustained in the Supreme Court: Pierce Estate, 398 Pa. 505. In addition, the record costs were assessed against the appellant.

Subsequently, respondents' property was delivered to petitioner, in compliance with these court decisions. At that time, it was learned that the bonds were coupon bonds, and had some past due interest coupons still attached. On May 10, 1960, Mr. Fleer wrote to Mr. Vadner and set forth the computation of his fee, in which, among other things, he claimed compensation at the

rate of 70 percent for the recovery of interest in the aggregate amount of $1,987.15, and record costs of $268.96. Respondents, through Mr. Vadner, immediately objected to the inclusion of interest for the purpose of computing petitioner's fee (and later extended that objection to the costs). After much correspondence, during which certain minor adjustments were made not affecting the basic dispute, petitioner retained bonds with a face value of $3,000, which his computation had shown to be due him on account of his compensation. The remaining bonds were deposited with the Montgomery County Bank and Trust Company in an account subject only to the order of the respondents jointly. The cash due respondents was remitted to them, but to date they have refused to cash or deposit the check, and it is presently in the possession of the petitioner.

The petition also sets forth that Mr. Fleer and Mr. Vadner continued to communicate regarding the dispute until the middle of July, 1960, but that no progress was made toward its solution, resulting in the filing of the present petition. Preliminary objections to the petition were filed, but dismissed by this court in an opinion dated April 18, 1961. An answer to the petition was then filed, and a hearing held on November 16, 1961. The matter has been argued, and briefs submitted, and the narrow issue now before the court is whether or not the language used in the agreements, set forth above, warrants the inclusion of interest and costs in determining the amount upon which petitioner's compensation is to be computed.

For the petitioner the argument is direct. He contends that the entire problem is controlled by the words "gross recovery" used in paragraph (2) of the first agreement, and which were carried over unchanged into the second agreement. Many arguments are advanced in petitioner's brief in support of the logic of

this contention, but essentially they propound the alleged plain meaning of the words in question. In his testimony, Mr. Fleer explained that the language is precise and technical, and was used by him to avoid the problem of cataloguing all the items which might enter into the final recovery, and which has been so often epitomized in the maxim, *"Expressio unius est exclusi alterius."* He says, in short, that "gross" means entire; and if interest, costs or anything else is deducted, whatever is left cannot be "gross".

At this point respondents' argument begins. The use of the words "gross recovery" is conceded; but they cogently argue that there are other words also to be considered in fixing the exact meaning of the agreements, namely, ". . . the excess over $21,000. in face value of said bonds or proceeds and cash recovered . . ." Respondents contend from this that petitioner did in fact specifically list the items of recovery upon which he expected to be paid, whether he subjectively intended to do so or not at the time the agreements were framed. Thus, the maxim invoked by petitioner can be used as readily against him as on his behalf.

Respondents also point out that the meaning of the words "gross recovery" in paragraph (2) of the original agreement is explained by the subsequent language in the same paragraph. This requires respondents to pay court costs and expenses, and they therefore contend that the whole paragraph means simply that petitioner's fee was to be computed before reimbursement of them for such costs and expenses.

Respondents finally argue that, even assuming ambiguity in the language of the agreements, they must be interpreted against the draftsmen (Betterman v. American Stores Company, 367 Pa. 193), and that an agreement between attorney and client must in cases of doubt be construed in favor of the client. As to the first contention, the record reveals that, regardless of

the stationery upon which they finally appeared, the agreements were the joint effort of Mr. Fleer and Mr. Vadner. Neither should be regarded as the draftsman to the hurt of the other. As to the second contention, even respondents admit in their brief that it is a rule of construction of last resort, and may not be used if the intention of the parties can be otherwise determined. It is not helpful in this case.

No question has been raised by the respondents as to the fairness of the compensation claimed by Mr. Fleer, and that issue is not in the case. Nevertheless, it seems fundamental that Mr. Fleer would be entitled to compensation for the recovery of more than $2,200 in interest and costs incurring to the benefit of respondents, if not under the terms of a written agreement, then under *quantum meruit*. Of course, the latter theory has not been advanced by Mr. Fleer, but this observation is made with reference to the fact that respondents must be charged with knowledge that an attorney will not be required to work for nothing. That they were in fact aware of this is borne out by the impressively detailed provisions of the fee agreements, which obviously were intended by both sides to provide for all of the difficulties and issues forseeable at the time of their drawing.

Reducing the issue, therefore, to its most elemental form, petitioner claims a fee based upon all of the dollars' worth recovered by him in excess of $21,000; respondents, however, would restrict him to such dollars' worth of the face value of bonds and a maximum of $405 in cash. I believe that respondents' position is untenable in the face of the plain meaning of "gross recovery", which is simply and artfully an expression encompassing everything obtained as a result of petitioner's efforts, without any deduction or diminution of any kind. The position of the phrase, in paragraph (3) of the original agreement, is somewhat equivocal,

as respondents have argued; but to conclude from this alone that the parties affirmatively intended to exclude interest and costs as elements upon which fees were to be paid is too great a step. Moreover, language appears in the second agreement, which goes far toward clarifying the problem which the wording of the first agreement created.

Both sides assert, and circumstances confirm, that it was not the purpose of the second agreement to alter any provision of the first, except that relating to the percentage rate of petitioner's fee. Thus, the effect of differences in wording in the second agreement is that of clarification of the first, as they are in final analysis one contract. The second agreement provides in paragraph (2) that petitioner should receive ". . . 70% of the *amount recovered* in excess of $21,000 . . ." The agreement of the respondents to this language, without any recorded objection, demonstrates to this court the real intention of the parties in this situation. Hence, in paragraph (1) of the original agreement, the significant language is not ". . . in face value of said bonds or proceeds and cash recovered, . . .", but rather ". . . on only the excess over $21,000 . . ." The first quoted language merely refers back to something which has already been said in the first paragraph, while the latter is the first provision of the $21,000 exclusion, this being the unique and troublesome feature of these agreements.

For the reasons set forth above, I hold that petitioner's construction of the contingent fee agreements dated May 22, 1957, and December 18, 1959, and his computation as set forth in Exhibit "D" to the original petition, are correct, and his retention of bonds with a face value of $3,000 and cash in an amount sufficient to pay the balance of his fee as computed, is approved. Petitioner remains in possession of $1,139.82 in cash, and the Montgomery County Bank and Trust Company

remains in possession of United States bonds in the face amount of $20,000, all of which are the property of Nancy Vadner Chance and Norman Vadner. These assets were so awarded by the adjudication in this estate, dated October 3, 1958, which is hereby affirmed.